IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

NEWMARKET CORP., et al.,

    Plaintiffs,

v.                                                   Civil Action No. 3:10cv503 [redacted]

INNOSPEC INC., et al.,

    Defendants.

## MEMORANDUM OPINION

By Order dated February 10, 2011, the Honorable Henry E. Hudson referred all pre-trial discovery motions raised in this case to the undersigned Magistrate Judge for disposition pursuant to 28 U.S.C. § 636(b)(1)(A). Before this Court is Plaintiffs NewMarket Corporation and Afton Chemical Corporation's Motion to Compel a Complete Answer to Interrogatory No. 4 ("Plaintiffs' Motion to Compel") (Docket No. 44) and Defendants Innospec Inc. and Alcor Chemie Vertriebs GmbH's Motion to Compel Plaintiff NewMarket Corporation to Produce a Prepared Rule 30(b)(6) Designee ("Defendants' Motion to Compel") (Docket No. 52). Both motions have been fully briefed. On March 25, 2011, the Court heard argument on the motions, and the matter is ripe for adjudication. For the reasons that follow, the Court will GRANT Plaintiffs' Motion to Compel and will GRANT IN PART and DENY IN PART Defendants' Motion to Compel.

---

1 [redacted] The Court has made available a redacted version of the Memorandum Opinion for electronic filing.

## I. Factual and Procedural Background

Plaintiff NewMarket Corporation ("NewMarket"), formerly known as Ethyl Corporation, "is a global corporation–and the parent of various subsidiaries which it oversees and controls–that develops, manufactures and sells chemical additives, including octane-boosting fuel additives used in connection with the production of gasoline for motor vehicles." (Second Am. Compl. ¶ 12.) (Docket No. 41.) Plaintiff Afton Chemical Corporation ("Afton") is a wholly-owned subsidiary of NewMarket that manufactures and sells methylcyclopentadienyl manganese tricarbonyl ("*mmt®*") globally. (Second Am. Compl. ¶ 13.) Defendant Innospec, Inc. ("Innospec") "is a global corporation–and the parent of various subsidiaries which it oversees and controls–that manufactures and sells, among other things, fuel and power-related chemicals, including octane-boosting fuel additives such as [tetraethyl lead ("TEL")]." (Second Am. Compl. ¶ 15.) Defendant Alcor Chemie Vertriebs GmbH ("Alcor") is a wholly-owned subsidiary of Innospec that sells and supplies TEL. (Second Am. Compl. ¶ 16.)

Plaintiffs generally allege that Defendants "brib[ed] government officials in Iraq and Indonesia to ensure ongoing sales in those countries of [TEL], Defendants' octane-boosting fuel additive, to the detriment of Plaintiffs and their sale of a competing and alternative octane-boosting fuel additive, [*mmt®*]." (Second Am. Compl. ¶ 1.) To achieve and maintain a monopoly over the octane-boosting fuel additives market in Iraq and Indonesia, Plaintiffs assert that Defendants engaged in the following: 1) paid kickbacks and bribes to Iraqi and Indonesian officials, improperly labeled as "after sales service fees," "commission payments," or "travel and other expenses" (Second Am. Compl. ¶¶ 56-57, 66, 107, 129); 2) bribed Iraqi and Indonesian officials to ensure that trial tests of *mmt®* would fail or that *mmt®* would be deemed an

unsuitable alternative to TEL (Second Am. Compl. ¶¶ 80-81, 125); and, 3) provided money, travel, gifts, entertainment, and other "pocket money" to Iraqi officials to secure benefits for Defendants (Second Am. Compl. ¶¶ 91-92). Plaintiffs further contend that Defendants have pled guilty to much of the related conduct alleged in the complaint in a criminal case in the United States as well as a criminal case in the United Kingdom and have entered into a settlement agreement in a civil case brought by the Securities and Exchange Commission. (Second Am. Compl. ¶¶ 147-51.)

Based on this alleged conduct, Plaintiffs assert five counts against Defendants. Count I asserts unlawful conspiracies in restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. (Second Am. Compl. ¶¶ 215-28.) Count II alleges unlawful commercial bribery in violation of Section 2(c) of the Robinson-Patman Act, 15 U.S.C. § 13(c). (Second Am. Compl. ¶¶ 229-40.) In Count III, Plaintiffs contend that Defendants' conduct constituted unlawful conspiracy in restraint of trade in violation of the Virginia Antitrust Act, Va. Code § 59.1-9.1 *et seq.* (Second Am. Compl. ¶¶ 241-55.) Count IV asserts unlawful commercial bribery in violation of the Virginia Antitrust Act, Va. Code § 59.1-9.1 *et seq.* (Second Am. Compl. ¶¶ 256-68.) Finally, Count V alleges unlawful conspiracy to injure another in its trade or business in violation of the Virginia Business Conspiracy Act, Va. Code § 18.2-499. (Second Am. Compl. ¶¶ 269-77.)

## II. Plaintiffs' Motion to Compel

### A. Interrogatory No. 4 and Defendants' Answer

Plaintiffs served their First Set of Interrogatories on November 5, 2010. Interrogatory Number 4 states the following:

For each instance that a payment was made by you, or through an agent, representative or other third party acting on your behalf, to the governments of Iraq or Indonesia, including an agency, regulatory authority, state-owned refinery or oil or gas company thereof, or to any present or former employee, official, or representative of Iraq or Indonesia, relating to your sales or marketing of octane-boosting fuel additives, including but not limited to the payments identified in the pleadings filed by the DOJ, SEC and SFO, identify:
a) the date the payment was made;
b) the person or entity to whom the payment was made;
c) the amount of the payment;
d) the purpose or reason for the payment;
e) the bank accounts from or through which the payment was made, transferred, funneled or processed, including the routing number of each bank account, the address of the bank's principal place of business, and the address of each bank branch or office at which the bank accounts were located;
f) the origination and termination of any wire transfers associated with any payment; and
g) any wire communications associated with those payments, including the origination and termination of any such wire communications.

(Pls.' Mot. to Compel Ex. A, Pls.' 1st Set of Interrogs. 8-9.)

In response, Defendants provided a schedule showing all payments made to the agents for activities in Iraq and Indonesia. These schedules provide the currency, amount, payment date, locations of originating bank, location of receiving bank, payer, payee, originating bank, originating account number, receiving bank, and receiving account number for all relevant transactions through agents in Iraq and Indonesia. Defendants also confirmed that all payments made to agents in Iraq originated from banks in Baar, Switzerland; Zug, Switzerland; or Liverpool, England and terminated in banks in either Geneva, Switzerland or Abu Dhabi, United Arab Emirates.

Through later supplemental responses, Defendants provided addresses for the banks listed in the schedules, as well as the purpose or reason, if known, for each listed payment. Defendants also produced documents gathered and prepared during the government investigations relating to

4

the individual fund transfers listed on the schedules. Defendants stated that these documents suggest that some payments may have been netted through other banks, but Defendants contend they cannot reasonably determine the specific bank accounts through which these payments were funneled. "Defendants confirm that their original answer to Interrogatory No. 4, as previously supplemented, included all information available to them regarding the specific bank accounts from which and to which funds were actually transferred. Defendants have no further information regarding specific account numbers." (Pls.' Mot. Compel Ex. D, Defs.' 3rd Supp'l Answer to Pls.' Interrog. No. 4, at 2.)

### B. The Parties' Arguments

Plaintiffs contend that Defendants failed to sufficiently answer subsection (e), (f), and (g), stating that Defendants did not provide information on bank accounts through which payments were funneled or information on any wire transfers/communications associated with those payments. Plaintiffs contend that Defendants have not met their due diligence requirement because they have refused to ask their banks for this information. Plaintiffs assert that while they may attempt to obtain the same information through the Hague Convention and Letter Rogatory requests, such attempts will be costly and timely (in their estimation, three to nine months) and will likely be futile given foreign banking privacy laws and Defendants' refusal to consent to the release of such information. Plaintiffs request an order compelling Defendants to produce this information or an order requiring Defendants to at least request this information from their banks.

Defendants do not dispute that the requested information is discoverable. Defendants, however, argue that the burden is on the requesting party to show that the answering party has

control over the information sought and that Plaintiffs fail to meet this burden. Defendants contend that they have no control over their banks' internal processing and interbank account information. Further, Defendants argue that even if they could seek this information in a more efficient manner than Plaintiffs, they are not obligated to assist Plaintiffs in developing their case.

### C. Analysis

Under Federal Rule of Civil Procedure 37, a motion to compel is proper when a party fails to answer an interrogatory, and an evasive or incomplete answer must be treated as a failure to answer. Fed. R. Civ. P. 37(a)(3)(B), (a)(4). District courts have broad discretion in resolving discovery problems, including motions to compel. *See, e.g., Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 64 (4th Cir. 1993); *LaRouch v. Nat'l Broad. Co.*, 780 F.2d 1134, 1139 (4th Cir. 1986).

Federal Rule of Civil Procedure 33 states that an interrogatory addressed to a party corporation must be answered "by any officer or agent, who must furnish the information *available to the party*." Fed. R. Civ. P. 33(b)(1)(B) (emphasis added). The United States Court of Appeals for the Fourth Circuit has said, "'[A]vailability' and 'control' are both 'words of art' and are 'used to express the same thought.'" *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 513 (4th Cir. 1977) (*quoting Commonwealth v. Happnie*, 326 N.E.2d 25, 28-29 (Mass. App. Ct. 1975)). Thus, in responding to interrogatories:

> The answering party cannot limit his answers to matters within his own knowledge and ignore information immediately available to him or under his control. If an appropriate interrogatory is propounded, the answering party will be required to give the information available to him, if any, through his attorney, investigators employed by him or on his behalf or other agents or representatives, whether personally known to the answering party or not. If the answering party lacks necessary information to make a full, fair and specific answer to an interrogatory, it should so state under oath and should set forth in detail the efforts made to obtain the information.

*Nat'l Fire Ins. Co. of Hartford v. Jose Trucking Corp.*, 264 F.R.D. 233, 238 (W.D.N.C. 2010) (citations omitted). "The burden is on the [answering party] to make an inquiry and obtain information to answer the interrogatories." *Id.* at 239.

Here, while Defendants "confirm" that their answer to Interrogatory No. 4 includes all the information available to them, Defendants, before the Court, state merely they need not make any additional efforts to obtain the information requested. Indeed, Plaintiffs contend, and Defendants have confirmed, that Defendants have refused to ask their banks for the information requested by Plaintiffs.[2] Based on this refusal, the Court finds that Defendants have not met their burden of making a reasonable inquiry and obtaining available information to answer Plaintiffs' interrogatory. *See Zervos v. S.S. Sam Houston*, 79 F.R.D. 593, 595-96 (S.D.N.Y. 1978) (requiring the plaintiff "to request all internal bank memoranda" for all relevant banking transactions). The Court thus finds Defendants' answer to be incomplete. In the interests of judicial economy and an orderly process of discovery,[3] the Courts ORDERS Defendants to seek

---

[2] Defendants' contention that they have no duty to make any further inquiry because Plaintiffs have failed to meet their burden of establishing control is based on non-binding precedent unpersuasive to the facts before the Court. *See, e.g., Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1426-27 (7th Cir. 1993) (speaking to the duty to ask in a procedurally and factually distinguishable circumstance). Here, Defendants have refused to make the inquiry to their banks, and this refusal hinders Plaintiffs from establishing whether or not Defendants have control over the requested information.

[3] Defendants argue that this is not the appropriate case for balancing the burdens. Yet, the Federal Rules of Civil Procedure "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Requiring Defendants to make a reasonable inquiry rather than proceeding via international subpoena is not only dictated by judicial economy, but it also provides the most commonsensical solution to the dispute at bar.

7

reasonably available information in response to Plaintiffs' Interrogatory No. 4 by asking their banks for information regarding:

> e) the bank accounts from or through which the payment was made, transferred, funneled or processed, including the routing number of each bank account, the address of the bank's principal place of business, and the address of each bank branch or office at which the bank accounts were located;
>
> f) the origination and termination of any wire transfers associated with any payment; and
>
> g) any wire communications associated with those payments, including the origination and termination of any such wire communications.

(Pls.' Mot. to Compel Ex. A, Pls.' 1st Set of Interrogs. 8-9.) A corporate designee for Defendants must answer these aspects of Interrogatory No. 4 in compliance with the Federal Rules of Civil Procedure. The Court thus GRANTS Plaintiffs' Motion to Compel. (Docket No. 44.)

### III. Defendants' Motion to Compel

#### A. Background

On November 5, 2010, the first day of discovery in this matter, Defendants served a Notice of Rule 30(b)(6) Deposition of NewMarket, scheduling the deposition for November 16, 2010. NewMarket did not make any objections to the Notice. At NewMarket's request, the parties agreed to reschedule the deposition for December 8, 2010. On November 24, 2010, Defendants served an Amended Notice of Rule 30(b)(6) Deposition of NewMarket, listing fourteen topics. NewMarket did not serve any objections as to the Amended Notice and designated two corporate representatives, including Richard Mendel, Vice President of Global Business for Lubricant Additives, who would testify as to thirteen of the fourteen topics.

The deposition was held on December 8, 2010, and Defendants contend that Mendel was not adequately prepared to testify as a Rule 30(b)(6) designee as to six topics contained in the Amended Notice. Defendants have thus filed a Motion to Compel, seeking an order compelling NewMarket to resume its Rule 30(b)(6) deposition as to topics 4, 5, 7, 9, 10, and 12 and to produce a properly prepared Rule 30(b)(6) designee to testify as to these topics.

NewMarket contends that Defendants chose to prematurely take the deposition before any documents had been produced, many designated topics were overbroad and vague, and Defendants asked questions seeking a level of specificity that no one could reasonably be expected to recall without being able to refer to documents. NewMarket argues that it diligently and in good faith prepared Mendel. NewMarket also asserts that allowing Defendants to resume the Rule 30(b)(6) deposition will result in cumulative and duplicative discovery because NewMarket has provided much of the requested information through interrogatory responses, Defendants may still proceed with a Rule 30(b)(6) deposition of Afton, and Defendants may depose individual NewMarket employees.

**B.     Analysis**

    **1.     Applicable Law**

A party may choose to take the deposition of a corporation and "must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf. . . . The persons designated must testify about *information known or reasonably available to the organization.*" Fed. R. Civ. P. 30(b)(6) (emphasis added). At the Rule 30(b)(6) deposition, the corporate designee "'speak[s] for the corporation'" and gives

"'binding answers for the corporation.'" *Humanscale Corp. v. CompX Int'l Inc.*, No. 3:09cv86, 2009 WL 5091648, at *2 (E.D. Va. Dec. 24, 2009) (*quoting United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996)). Thus, "[t]he corporation must make a good-faith effort to designate people with knowledge of the matter sought by the opposing party and to adequately prepare its representatives so that they may give complete, knowledgeable, and nonevasive answers in deposition." *Id.* at *1.

When a Rule 30(b)(6) designee is unprepared or unknowledgeable of relevant facts, sanctions may be properly imposed "because such an 'appearance is, for all practical purposes, no appearance at all.'" *Id.* at *2 (*quoting Resolution Trust Co. V. S. Union Co.*, 985 F.2d 196, 197 (5th Cir. 1993)). A motion to compel, under Rule 37, is proper when a corporation fails to make a designation under Rule 30(b)(6), or presents an unprepared, unknowledgeable designee. *See* Fed. R. Civ. P. 37(a)(3)(B)(ii), (a)(4).

### 2. The Court Grants Defendants' Motion to Compel with Respect to Topics 4 and 5

Topic 4 required the corporate designee to be prepared to answer questions regarding "[t]ravel expenses or other sums paid to or on behalf of agents, employees or other representatives of the Governments of Iraq or Indonesia or any oil companies or refineries in those countries." (Defs.' Mot. to Compel Ex. 2, Ex. A, ¶ 1(h).) █████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████

████████████████████████████████



Topic 5 required the corporate designee to be knowledgeable about "[t]echnical tests (including fuel trial tests and refinery tests) of [*mmt®*] for sale to or in Iraq or Indonesia or in the global market." (Defs.' Mot. Compel Ex. 2, Ex. A, ¶ 1(j).)

While Mendel was able to fully and unevasively give answers to many of the questions asked in relation to many topics, Topics 4 and 5 are two topics for which he did not have adequate knowledge as a corporate designee.[4] "It seems the knowledge was readily available to the corporation by, for example, asking employees or supervisors about the subject matter."

---

[4] To the extent that NewMarket claims these topics lack reasonable particularity, the Court rejects this argument because NewMarket never objected to the form of the deposition topics before or during the deposition. *See Humanscale Corp.*, 2009 WL 5091648, at *5. Similarly, NewMarket failed to lodge any objection at any time before or during the deposition that it was premature. Regardless, the Court finds Mendel's testimony as to these two topics to be inadequate for any stage of litigation. This is especially true because Topics 4 and 5 relate to fundamental issues identified in the pleadings, specifically causation and defenses.

The Court also finds that reopening the deposition as to these two topics will not result in cumulative or duplicative discovery. Despite the existence of other discovery mechanisms, Defendants are entitled to depose NewMarket through an adequately prepared Rule 30(b)(6) corporate designee.

*Martinez-Hernandez v. Butterball, LLC*, No. 5:07cv174-H, 2010 WL 2089251, at *7 (E.D.N.C. May 21, 2010). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The Court thus finds that Mendel was not adequately prepared to answer questions related to Topics 4 and 5 of the Amended Notice. Accordingly, the Court GRANTS IN PART Defendants' Motion to Compel and ORDERS NewMarket to resume its Rule 30(b)(6) deposition as to Topics 4 and 5 and to produce an adequately prepared and knowledgeable corporate designee that can testify as to Topics 4 and 5.

### 3. The Court Denies Defendants' Motion to Compel with Respect to Topics 7, 9, 10, and 12

Topics 7 and 9 required the corporate designee to be prepared to testify as to the marketing of *mmt®* globally as well as NewMarket's costs and profits involved in manufacturing and selling *mmt®* from 2000 to present.

Topic 10 inquired about the "alleged substitutability and/or interchangeability of [*mmt®*] and TEL and the geographic and product markets in which they allegedly compete." (Defs.'

Mot. Compel Ex. 2, Ex. A, ¶ 1(k).) █████████

█████████

█████████

Finally, Topic 12 required the corporate designee to be knowledgeable about the alleged fraudulent concealment engaged in by Defendants. █████████

█████████

█████████

Thus, as to Topics 7, 9, 10, and 12, the Court finds that NewMarket adequately prepared and presented a knowledgeable corporate designee to testify on behalf of NewMarket, and the Court DENIES Defendants' request to reopen the Rule 30(b)(6) deposition on these topics.

### IV. Conclusion

For the foregoing reasons, the Court will GRANT Plaintiffs' Motion to Compel (Docket No. 44) and will GRANT IN PART and DENY IN PART Defendants' Motion to Compel (Docket No. 52).

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: 4-1-11