IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

NEWMARKET CORP., et al.,

    Plaintiffs,

v.                                                                                  Civil Action No. 3:10cv503

INNOSPEC INC., et al.,

    Defendants.

## MEMORANDUM OPINION

By Order dated February 10, 2011, the Honorable Henry E. Hudson referred all pre-trial discovery motions raised in this case to the undersigned Magistrate Judge for disposition pursuant to 28 U.S.C. § 636(b)(1)(A). Before this Court is Defendants Innospec Inc. and Alcor Chemie Vertriebs GmbH's Motion to Remove "Confidential" Designation Pursuant to Protective Order ("Motion to Remove"). (Docket No. 66.) Plaintiffs NewMarket Corporation and Afton Chemical Corporation have filed a response. (Docket No. 74.) On March 25, 2011, the Court heard argument on the motion. Both parties have since provided the Court with supplemental submissions for the Court's in camera review. The matter is ripe for adjudication. For the reasons that follow, the Court will GRANT Defendants' Motion to Remove.

### I. Summary of the Factual Allegations and Claims

Plaintiff NewMarket Corporation ("NewMarket"), formerly known as Ethyl Corporation, "is a global corporation–and the parent of various subsidiaries which it oversees and controls–that develops, manufactures and sells chemical additives, including octane-boosting fuel additives used in connection with the production of gasoline for motor vehicles." (Second

Am. Compl. ¶ 12.) (Docket No. 41.) Plaintiff Afton Chemical Corporation ("Afton") is a wholly-owned subsidiary of NewMarket that manufactures and sells methylcyclopentadienyl manganese tricarbonyl ("*mmt®*") globally. (Second Am. Compl. ¶ 13.) Defendant Innospec, Inc. ("Innospec") "is a global corporation–and the parent of various subsidiaries which it oversees and controls–that manufactures and sells, among other things, fuel and power-related chemicals, including octane-boosting fuel additives such as [tetraethyl lead ("TEL")]." (Second Am. Compl. ¶ 15.) Defendant Alcor Chemie Vertriebs GmbH ("Alcor") is a wholly-owned subsidiary of Innospec that sells and supplies TEL. (Second Am. Compl. ¶ 16.)

Plaintiffs generally allege that Defendants "brib[ed] government officials in Iraq and Indonesia to ensure ongoing sales in those countries of [TEL], Defendants' octane-boosting fuel additive, to the detriment of Plaintiffs and their sale of a competing and alternative octane-boosting fuel additive, [*mmt®*]." (Second Am. Compl. ¶ 1.) To achieve and maintain a monopoly over the octane-boosting fuel additives market in Iraq and Indonesia, Plaintiffs assert that Defendants engaged in the following: (1) paid kickbacks and bribes to Iraqi and Indonesian officials, improperly labeled as "after sales service fees," "commission payments," or "travel and other expenses" (Second Am. Compl. ¶¶ 56-57, 66, 107, 129); (2) bribed Iraqi and Indonesian officials to ensure that trial tests of *mmt®* would fail or that *mmt®* would be deemed an unsuitable alternative to TEL (Second Am. Compl. ¶¶ 80-81, 125); and, (3) provided money, travel, gifts, entertainment, and other "pocket money" to Iraqi officials to secure benefits for Defendants (Second Am. Compl. ¶¶ 91-92). Plaintiffs further contend that Defendants have pled guilty to much of the related conduct alleged in the complaint in a criminal case in the United States as well as a criminal case in the United Kingdom and have entered into a settlement

agreement in a civil case brought by the Securities and Exchange Commission. (Second Am. Compl. ¶¶ 147-51.)

Based on this alleged conduct, Plaintiffs assert five counts against Defendants. Count I asserts unlawful conspiracies in restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. (Second Am. Compl. ¶¶ 215-28.) Count II alleges unlawful commercial bribery in violation of the Robinson-Patman Act, 15 U.S.C. § 13(c). (Second Am. Compl. ¶¶ 229-40.) In Count III, Plaintiffs contend that Defendants' conduct constituted unlawful conspiracy in restraint of trade in violation of the Virginia Antitrust Act, Va. Code § 59.1-9.1 *et seq.* (Second Am. Compl. ¶¶ 241-55.) Count IV asserts unlawful commercial bribery in violation of the Virginia Antitrust Act, Va. Code § 59.1-9.1 *et seq.* (Second Am. Compl. ¶¶ 256-68.) Finally, Count V alleges unlawful conspiracy to injure another in its trade or business in violation of the Virginia Business Conspiracy Act, Va. Code § 18.2-499. (Second Am. Compl. ¶¶ 269-77.) By Order dated May 20, 2011, the Court granted in part a motion to dismiss filed by Defendants and dismissed Count II. (May 20, 2011 Order.) (Docket No. 98.)

## II. Procedural History

### A. The Protective Order

On February 25, 2011, the Honorable Henry E. Hudson signed a Protective Order submitted by the parties to facilitate discovery and protect the parties' and non-parties' confidential information from improper disclosure or use. (Docket No. 61.) The Protective Order defines "Confidential Material" as:

> [A]ny Discovery Material . . . believed in good faith to contain, reflect or concern (i) trade secrets as defined in Va. Code § 59.1-336;[1] (ii) business plans and *confidential* sales or marketing information such as profit-and-loss data, cost data, price lists, and *confidential* customer lists; (iii) confidential technical know-how; and (iv) other *highly-sensitive* proprietary, commercial, and financial information that would be competitively harmful if made public or disclosed to a party or parties to this Action.

(Protective Order ¶ A.3 (emphasis added).) However, material is not confidential if the information contained is already public knowledge, becomes public knowledge, or comes into the receiving party's legitimate possession from another source. (Protective Order ¶ A.8.)

Confidential material may only be used in connection with this action and may only be disclosed to outside counsel, general counsel, testifying or consulting experts, and persons who already had access to or knowledge of the confidential material. (Protective Order ¶ C.1.)

If a party disagrees with the designation of "Confidential Material" and such disagreement cannot be resolved after good-faith negotiation, the party may challenge the designation by motion to the Court. (Protective Order ¶ B.10.) "The Designator [the person who produced and designated such material as Confidential Material (Protective Order ¶ A.4)] shall

---

[1] This statute provides in relevant part:

"Trade secret" means information, including but not limited to, a formula, pattern, compilation, program, device, method, technique, or process, that:

1. Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and

2. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Va. Code. § 59.1-336.

4

have the burden of establishing that its designation is supported by good cause." (Protective Order ¶ B.10.)

### B. Defendant's Motion to Remove

Defendants now challenge Plaintiffs' designations of the documents labeled NM0900100006-28, 43-55, 59-67, 71-79, and 82-93 as containing confidential material pursuant to the Protective Order. These documents consist of travel expense invoices, receipts, and related e-mails, some dating back to 2005 and others as recent as 2010.

Plaintiffs contend that the documents at issue are properly designated as confidential because they contain confidential sales or marketing information, confidential customer lists, and other highly sensitive proprietary commercial and financial information that would be competitively harmful if released to the public. Because Plaintiffs allegedly spent years developing and pursuing its customer contacts in Iraq and Indonesia and zealously guard the identity of these potential or current customers, Plaintiffs contend any documents listing customer names should be construed as confidential customer lists. Plaintiffs further argue that the documents at issue reveal decisions on which seminars and product demonstrations should be held, the number of persons invited, and the amount of money spent on each demonstration. Plaintiffs contend that this information equals the building blocks of their marketing strategy and would be harmful if shared with their competitors.

Defendants counter that Plaintiffs have failed to show good cause for designating these documents as confidential. Because Plaintiffs' complaint publicly identifies Iraqi and Indonesian government officials as potential customers, Defendants assert that Plaintiffs cannot now claim

these particular names are confidential. Defendants further contend that the hotel bills, receipts, and airfare invoices should not be deemed confidential marketing information.

On March 25, 2011, the Court heard argument on Defendants' Motion to Remove. At the close of argument, the Court informed Plaintiffs that it needed more specific information as to why these particular names and expenses should be protected from disclosure and invited the parties to file submissions for in camera review. Both parties provided the Court with a submission for in camera review.

### III. Analysis

Under the terms of the Protective Order entered in this matter, the designator, here the Plaintiffs, bears the burden of establishing that the confidential designation is supported by good cause. (Protective Order ¶ B.10.) Thus, when the confidentiality of a document is challenged, the party seeking continued protection pursuant to the Protective Order must satisfy the "good cause" standard required under Federal Rule of Civil Procedure 26(c).[2] *Minter v. Wells Fargo Bank, N.A.*, Nos. WMN-07-3442, WMN-08-1642, 2010 WL 5418910, at *1 (D. Md. Dec. 23, 2010) (stating that an umbrella protective order allows parties "to temporarily enjoy the protection of Rule 26(c) by rendering all discovery documents designated in good faith confidential until challenged" by the opposing party); *Massey Coal Servs., Inc. v. Victaulic Co. of Am.*, 249 F.R.D. 477, 480 (S.D. W. Va. 2008).

---

[2] Rule 26(c) provides in relevant part: "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way . . . ." Fed. R. Civ. P. 26(c).

To show good cause, the party seeking protection from disclosure must demonstrate that "'(1) the material in question is . . . confidential information within the scope of Rule 26(c), and (2) disclosure would cause identifiable harm.'" *Minter*, 2010 WL 5418910, at *8 (*quoting Deford v. Schmid Prods. Co.*, 120 F.R.D. 648, 652-53 (D. Md. 1987)). Importantly, the party seeking protection must identify "'*specific* prejudice or harm that will result'" if disclosure is allowed. *Lathon v. Wal-Mart Stores East, LP*, No. 3:09cv57, 2009 WL 1810006, at *5 (E.D. Va. June 24, 2009) (*quoting Sullivan v. Dollar Tree Stores, Inc.*, No. CV-07-5020-EFS, 2008 WL 706698, at *1 (E.D. Wash. Mar. 14, 2008)). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the R[ule] 26(c) test." *Minter*, 2010 WL 5418910, at *8.

Here, Plaintiffs have failed to show good cause for the confidential designation of the information at issue. First, aside from general and conclusory allegations, Plaintiffs have failed to make a specific demonstration, either in their initial briefing or in their in camera submission, that would allow this Court to find that the disputed documents contain confidential customer lists, confidential sales or marketing information, or other highly sensitive proprietary commercial or financial information. Plaintiffs have simply not made a showing that they spent years developing and cultivating these particular named contacts, that they undertook efforts to ensure that these contacts were kept secret, or that these contacts are not readily ascertainable from other sources. Plaintiffs have similarly failed to provide sufficient justification for maintaining the confidentiality of the particular hotel expenses, travel expenses, and related e-mails at issue.

Second, while Plaintiffs have made general allegations of the harm that will result from the disclosure, they have failed to allege specific facts, through affidavits or otherwise, of any clearly defined injury to its competitive position. The good cause requirement "'contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'" *Great Am. Ins. Co. v. Gross*, No. 3:05cv159, 2007 WL 1577503, at *12 (E.D. Va. May 30, 2007) (*quoting S.E.C. v. Dowdell*, 3:01cv116, 2002 WL 1969664, at *2 (W.D. Va. Aug. 21, 2002)). Because Plaintiffs have failed to meet their burden of establishing that their confidential designation is supported by good cause as to the documents labeled NM0900100006-28, 43-55, 59-67, 71-79, and 82-93, the Court will GRANT Defendants' Motion to Remove.

## IV. Conclusion

For the foregoing reasons, the Court will GRANT Defendants' Motion to Remove. (Docket No. 66.) Accordingly, the documents labeled NM0900100006-28, 43-55, 59-67, 71-79, and 82-93 shall no longer be deemed confidential.

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: 5-25-11

8